## Commonwealth *versus* Pottsville Water Company.

The original charter of the Pottsville Water Company, granted in 1834, gave it limited powers, and authorized it to commence operations on a capital of $20,000. By the Act of February 18th 1854, the charter was changed in many important particulars, and the company was authorized to enlarge and extend their works, and to increase their capital stock to $200,000. The act further declared: "The stock in said company shall be exempt from all taxation whatsoever." The powers of the company were further enlarged by subsequent acts. The accounting officers of the Commonwealth settled an account against the company for taxes on its capital stock, from 1859 to 1878, contending that the exemption clause in the Act of 1854 was not a contract, but a gratuity, which was repealed by subsequent legislation, and that the company was liable to the tax: *Held*, affirming the court below, that the exemption was binding on the Commonwealth, and that the tax could not be collected.

May 21st 1880.    Before MERCUR, GORDON, PAXSON, TRUNKEY STERRETT and GREEN, JJ.    SHARSWOOD, C. J., absent.

Error to the Court of Common Pleas of *Dauphin county*: Of May Term 1880, No. 215.

This was an appeal to the Court of Common Pleas of Dauphin county by the Pottsville Water Company for a settlement made by the auditor general and state treasurer against said company for tax on capital stock for the years 1859 to 1878 inclusive. The case was tried before the court, without a jury, and without any pleadings except the settlement made by the Commonwealth and the appeal filed by the company.

The court, Pearson, P. J., found the facts as follows:

"On the 11th day of April 1834, an act was passed authorizing the Pottsville Water Company to be incorporated with a capital stock of $20,000, letters patent to be issued on $10,000 being subscribed *pro ut* statute: Pamph. L. 1833 and 1834, p. 274. The water was to be brought for the supply of the town from a spring within the borough. On the 21st day of March 1836, the governor was authorized to incorporate the company, when two hundred shares of $25 each shall be subscribed. See Pamph. L. March 21st 1836. On the 28th day of March 1836, a charter of incorporation was issued by the governor. A further supplement was enacted on the 12th of February 1849, by which the company was authorized to increase its capital stock from $20,000 to $50,000, and bring into the borough the water of Mill creek, or its branches. A further supplement was passed on the 18th day of February 1854, by which the original charter was most essentially changed in many particulars. The capital stock was increased to $200,000. The corporation was authorized to borrow $50,000, to greatly extend its waterworks, to supply the boroughs of St. Clair and Port Carbon, and the towns of Palo Alto and Mount Carbon with

[Commonwealth *v.* Pottsville Water Co.]

water, to contract with the boroughs, to pay semi-annual dividends of three per cent. on the additional cost of supplying the boroughs on the same conditions as supplying Pottsville, correct accounts to be kept and supplied, particularly of bringing the water in from Mill creek, to assess taxes on all of these boroughs to pay yearly dividends.

" The different boroughs to be supplied are authorized to subscribe stock, and give their bonds so as to make up the annual dividends, and the eleventh section declares ' the stock in said company shall be exempt from all taxation whatsoever.' But when these different boroughs shall be repaid their advances, and pay dividends exceeding six per cent., the excess shall be taxed for state purposes, and the remainder of the dividends suffered to accumulate to meet expenses in repairing or enlarging the works or divided among the stockholders. It is further provided that if the corporation shall not proceed within two years to carry on the work and complete the same within three years, the privileges granted are to cease and revert to the Commonwealth, all of which supplement, in full, we find part of this case: See Pamph. L. 1854, pp. 79 to 85. We further find that by a law enacted on the 12th day of April 1855, the Pottsville Water Company was authorized to borrow $50,000 to carry on its work. We further find that the whole capital stock subscribed in this company was $200,000, of which but $127,975 was paid in, on which alone dividends were declared of six per cent. per annum, and no more, from November 1859 until the end of November 1878. That this stock was subscribed and paid after the supplement of the 18th day of February 1854, and under the provisions of the same. The company also extended its works some six miles up Mill creek, to obtain a proper supply of water, and in addition to furnishing the borough supplied the other boroughs and towns mentioned in the supplement, as provided therein. We also find that no notice was given to the company to make report of its dividends till about the year 1878, or notice given that the Commonwealth claimed to tax its stock."

The following were the conclusions of law of the court:

" The claim on the part of the Commonwealth is to tax the capital stock of the Pottsville Water Company, under the Act of April 12th 1859, at the rate of one-half mill on each one per cent. of dividend made by it since the date of that act. This is resisted by the company, on the ground that it is exempt from taxation under its charter law, the eleventh section of which declares, ' The stock of said company shall be exempt from all taxation whatsoever.' If this provision was in the original charter, there would be no doubt as to it being clear of taxes, and it would transcend the power of the state to impose it, but it is in the supplement enacted on the 11th day of February 1854. Until 1857 the legislature possessed

[Commonwealth *v.* Pottsville Water Co.]

no control over charters once granted, as has been settled from Dartmouth College *v.* Woodward, 4 Wheat. 518, through various bank, bridge, railroad and other cases, down to the present time. It is not to be shaken. It is considered part of the contract. On the other hand, where the privilege is a mere gratuity, granted by the legislature without consideration, it is not binding, and can afterwards be revoked, whenever the necessities of the state or the bad faith of the legislature tempts that body to call it in question. We have numerous cases of late between individuals, and between the state and private persons and corporations. It is the settled doctrine, founded on sound principles. The books are full of cases. We need not recapitulate. The question is, have we not before us an intermediate case ?

"Under the Act of 1834, a very small company was incorporated. The capital stock was only $20,000. The intention was to carry the water of a spring through the borough, the spring being situated within its limits. Only some $5000 were paid in. When 200 shares were subscribed, and $5 paid on each share, it was provided that letters patent might be issued by the governor, which was done on the 28th day of March 1836. Afterwards, under the Act of 1854, the capital was greatly enlarged, increased to $200,000, the waters of a considerable stream—Mill creek—to be brought in, four other towns to receive a supply of water from the works, the company to commence them within two years, and complete them within three years from that time, and unless finished, the whole to be forfeited to the Commonwealth. This statute, both in form and substance, creates a new corporation, though not in name. It has within its pages all of the acts required and customary at that time under our statutes to be done—books to be opened, elections to be held, and, in short, all of the duties of a new corporation, and in that law is inserted the provision that the stock shall be exempt from taxation. Under that statute $200,000 was subscribed, $127,975 paid in, the work extended six miles up Mill creek, the towns all supplied, and the waterworks carried on ever since. We had no proof on the trial that any work had been previously done; but it is fair to presume that the water of the spring had in some way been conducted through the town of Pottsville, but no further. We cannot doubt but that the exemption from taxation was inserted in that statute to induce subscriptions, and cause the completion of the waterworks, and the money was subscribed and paid in on the faith of that provision.

"It is urged that this promise was without consideration, and, therefore, not binding. That may be conceded, if it was merely gratuitous; but a consideration is loss to the promisee or benefit to the promiser. Here we have pretty strong evidence of loss to the promisee by the subscription of four times as much stock as was ever taken before, and the payment of more than eight times as

[Commonwealth *v.* Pottsville Water Co.]

much money as was paid at the time the company got its charter. The waterworks, if previously existing at all, were small, of comparatively small service, and made at little cost. This might be compared to a railroad company which had built its road for a hundred miles to its place of destination, and the state would say that, in consideration of your having done this, we will pay you a bonus of $5000 a mile. No one would say such a promise was binding. But if it was said, if you will extend this road two hundred miles further, to another point, we will pay you a like bonus, and it was done, such promise would be binding, and could be enforced. This case is very similar in principle.

" It is also urged that there was no promise made, and nothing required to be done by the company. It is very rare to find corporations bound to perfect projected works. The privilege is given to build or to do, and if the charter is accepted and act done, it is considered and held to be a contract. If, in such a charter, a promise is made by the state, it is held binding; why not be equally so, when it is said to an existing corporation, if you will greatly extend your works, expend ten times as much money in doing it, you shall have certain defined privileges? We consider the promise, made under the circumstances and conditions shown in this case, quite as binding as if inserted in the original charter, and that good faith towards those who subscribed their stock requires that the contract should be carried out, and the taxation attempted to be imposed is a nullity, and cannot be enforced. We do not believe it was ever intended by the legislature, and if so intended, would do great injustice to the corporators. We shall, therefore, find in favor of the defendant. On the facts, as found of record, we find in favor of the defendant."

The Commonwealth excepted to the decision of the court alleging that the court erred, inter alia, as follows :

5. In concluding that sect. 11 of the Act of 1854, which declares that " the stock of said company shall be exempt from all taxation whatsoever," created a binding contract which exempted the company from taxation under the several tax laws of April 12th 1859, Pamph. L. 529; 1st May 1868, Pamph. L. 109; 24th April 1874, Pamph. L. 68; 20th March 1877, Pamph. L. 6.

6. In not concluding that the company was liable to pay the tax imposed by the fifth section of the Act of 24th April 1874, Pamph. L. 68, and the third section of the Act of 20th March 1877, Pamph. L. 6, even though the company be exempt from taxation under prior laws.

7. In not deciding in favor of the Commonwealth.

The court overruled the exceptions and entered judgment for defendant, whereupon the Commonwealth took this writ and alleged that the court erred in this action.

*C. W. Wells*, *Lyman D. Gilbert*, Deputy Attorney-General, and *Henry W. Palmer*, Attorney-General, for the Commonwealth. —The exemption in the Act. of 1854 was not a contract but a mere gratuity, and was repealed by the general legislation imposing taxation upon all companies : Commonwealth *v.* Bird, 12 Mass. 442 ; People *v.* Commissioners of Taxes, 47 N. Y. 501; Christ Church Hospital *v.* Philadelphia, 24 How. 302; Tucker *v.* Ferguson, 22 Wall. 527; West Wisconsin Railroad Co. *v.* Supervisors, 3 Otto 595. This last case bears a striking analogy both in fact and principle with the one at bar.

Seeking to deduce, from the authorities above cited (which are the leading ones establishing the doctrine of gratuity as distinguished from contract), as well as from the large number holding contracts to exist under the facts therein, a principle which may be recognised as the boundary between the two classes of cases granting away the sovereign power of taxation, is no easy task, but we respectfully submit to the court the following as being possibly the correct distinction between the two classes of cases :

Where the Act of Assembly creating the exemption from taxation also imposes a reciprocal obligation upon the company, binding it, so soon as the act goes into operation as a law, to do some particular thing to or for the state or the public which it was not already its legal duty to do, then such act, upon the performance by the company of that which it was obliged to do therein, constitutes a contract which the state cannot violate by imposing a tax.

But where the act does not impose such reciprocal obligation upon the company, but leaves it entirely optional with the company whether it will or will not do that new thing proposed, the legislature did not intend to create a contract absolutely exempting from taxation, but only to offer a gratuity to remain in force so long as it wills, or where the consideration is not to or for the state or the public, but is private in its nature, the consideration is not of that nature which will enable the legislature to make a binding grant of the taxing power.

It was left entirely optional with this company whether or not it would do any of the things it was authorized therein to do, sect. 14 of the act being of exactly the same character as the clause in West Wisconsin Railroad *v.* Supervisors, *supra*, which the court there held to leave the proposal optional with the company to accept or not. There was not even the implied obligation on the company, such as is raised by the acceptance of a charter, authorizing it to execute a projected work, because this company had already, by the Act of 1819, been authorized, and by its acceptance had obliged itself to do the very thing which it is claimed here to constitute the consideration of this exemption, *i. e.*, the building of the Mill creek line.

We doubt whether a single well-considered case can be found, which will support a contract made upon the consideration found

[Commonwealth *v.* Pottsville Water Co.]

here, to wit, loss to the promisee, but that they all have a consideration either flowing directly to the state, such as bonus, commutation of tax, real estate conveyed, services performed, or benefit to the public at large, such as building bridges, railroads, canals, opening banks. The quantum of consideration is, doubtless for the legislature alone, but is not the quality one as well for the courts.

*Edward Owen Parry,* for defendant in error.—The facts in this case are radically different from those in the cases cited by the learned counsel of the Commonwealth to sustain their propositions. The cases cited may be divided into two classes. First, where the exemption from taxation was granted to an existing corporation without any consideration, and therefore was to be considered not a contract, but a gratuity; and, second, where there was nothing in the act creating the corporation from which it could be implied that it was the intention of the legislature that no other or greater tax should be imposed than the tax mentioned in it.

Christ Church Hospital, 12 Harris 230, and 24 Howard 300, may be considered as the leading case of the first class, on which the case of Tucker *v.* Ferguson, 22 Wallace 527, was ruled, and which was followed by the Wisconsin Railroad Case, 3 Otto 595, so much relied on in the argument of the counsel of the Commonwealth, and which was decided on the authority of Tucker *v.* Ferguson, and so stated by the learned judge who delivered the opinion of the court. The Easton Bank Case, 10 Barr 451, may be considered as the leading case of the second class, and which was held by the learned judge who delivered the opinion of the court in Menrot *v.* Wilmington Railroad, 18 Wallace 206, as ruling that case. '

We, therefore, deny that the cases cited for the Commonwealth have any bearing on the question now before the court.

Mr. Justice MERCUR delivered the opinion of the court, May 31st 1880.

It is well settled law, that an act of incorporation is a contract between the state and the stockholders. A subsequent grant of additional powers does not necessarily stand on the same high grounds. The original charter of this defendant gave quite limited powers, and authorized it to commence operations with a small capital. At first it supplied the borough of Pottsville with water from a spring within the borough. A supplement increased its capital to $50,000, and authorized it to bring water from outside the borough. Afterwards the Act of 18th February 1854 changed the charter in many important particulars. The capital stock was thereby increased to $200,000, and it was authorized to so enlarge and extend its works as to supply with water two other boroughs, and two other towns; to enter into contracts with those boroughs for the payment by them of specific dividends on the additional

cost of supplying them with water.   Those boroughs were authorized to subscribe stock and give their bonds to secure the payment of the dividends for which they became responsible.   The act further declared "the stock in said company shall be exempt from all taxation whatsoever."   When this act was passed there was no constitutional inhibition against the exemption.   The stock now sought to be taxed was subscribed and paid for after the passage of this act of 1854 and under its provisions.   Under the powers therein given the corporation extended its works several miles up a stream to procure water, and supplied the boroughs and towns in accordance therewith.   The later Act of 12th April 1855 authorized the company to borrow $50,000 to carry on its work.   Thus it is shown, the powers of the company inducing large expenditures, were increased and changed by the supplement of 1854.   They were accepted and acted upon.   Several other municipalities were brought within the operation of those new powers, and became obligated to the performance of legal duties consequent thereon.   The enlarged duties and obligations imposed by the act substantially created a new corporation.   It is no answer to say the corporation was not bound to assume those new powers and duties.   That is true, yet it did assume them.   Relying thereon it made large expenditures.   With as much force it might be said the company was not compelled to accept the original grant of its charter.   Its rights are not thus to be determined.   Although free to accept or reject, yet having accepted all the rights and exemptions given by the act follow.   The learned judge correctly held the stock of the company exempt from taxation.

Judgment affirmed.